SEYFARTH SHAW LLP
Gregory A. Markel (GM 5626)
gmarkel@seyfarth.com
Heather E. Murray (admitted *pro hac vice*)
hmurray@seyfarth.com
620 Eighth Avenue
New York, New York 10018
Telephone:     (212) 218-5500
Facsimile:     (212) 218-5526

SEYFARTH SHAW LLP
Giovanna A. Ferrari (SBN 229871)
gferrari@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
MICHAEL R. FITZSIMMONS, PETER LAI,
CHRISTOPHER G. POWER,
PETER J. GOETTNER, CHRISTIAN BORCHER,
ERNEST D. DEL, MARC S. YI,
JAMES C. PETERS and SOUHEIL S. BADRAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. ABDO, as Trustee of the JOHN E. ABDO TRUST DATED JUNE 11, 2014, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL FITZSIMMONS, et al.,<br><br>Defendants. | Case No. 17-cv-00851 EDL<br>Case No. 17-cv-01232 EDL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL DOCUMENTS AND TESTIMONY FROM LATHAM & WATKINS, LLP RESPONSIVE TO DEFENDANTS' SUBPOENAS**<br><br>Date:       October 1, 2019<br>Time:       10:00 a.m.<br>Courtroom: E, 19th Floor |
| RISING TIDE I, LLC et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL FITZSIMMONS, et al.,<br><br>Defendants. | |

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 1, 2019 at 10 a.m. or as soon thereafter as the parties may be heard, in the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 95102, before the Honorable Elizabeth D. LaPorte, Courtroom E, on the 19th Floor, Defendants Michael R. Fitzsimmons ("Fitzsimmons"), Peter Lai, Chris G. Power, Peter J. Goettner, Christian Borcher, Ernest D. Del., Marc S. Yi, James C. Peters, Souheil S. Badran ("Defendants") will and hereby do move the Court for an order compelling the production of documents responsive to subpoenas served on Latham & Watkins, LLP ("Latham") and compelling testimony related thereto over Latham's attorney-client privilege and work product objections.

Defendants bring this motion on grounds that: (i) the Delivery Agent Audit Committee members (Defendants Power, Goettner, and Borcher), as well as the other individual Defendants, hold the privilege over the Subpoenaed Matters with Latham and therefore can waive it; (ii) no valid privilege exists in the Subpoenaed Matters with Latham as Delivery Agent waived any such privilege before a Bankruptcy Trustee was appointed; (iii) neither Latham nor the Trustee can reasonably continue the fiction that the attorney-client privilege will maintain the confidentiality of the Subpoenaed Matters; (iv) fairness and equity require waiver of any privilege; and (v) the attorney-client privilege does not protect from disclosure non-privileged information that Latham has not produced.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support thereof, the Declarations of Giovanna Ferrari, Gregory Markel, Chris Power, James Peters, Mark Smith, Jeffrey Hagan, Michael Fitzsimmons, and upon such other and further oral and written materials as may be presented at or before the hearing on this matter.  For the sake of judicial economy, Defendants join in and fully incorporate all arguments set forth in Defendants' Opposition to Plaintiffs' Motion to Strike as if set forth fully herein rather than include them in full in this Memorandum. Defendants also respectfully request that this Court resolve the

1
Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

1    Motion to Strike and the instant motion concurrently since the issues in both motions are

2    inextricably linked.

3    DATED:   August 27, 2019                SEYFARTH SHAW LLP

4                                            By_____/s/___Giovanna Ferrari_____

5                                            Giovanna Ferrari
                                             Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ...................................................................... 1

II.     FACTUAL BACKGROUND ................................................... 3

        1.     Plaintiffs, Delivery Agent, and Defendants. ............................. 3

        2.     Delivery Agent's Audit Committee. ......................................... 4

        3.     Latham. ..................................................................................... 4

                a.     As Principal Legal Counsel. ........................................ 5

                b.     As Counsel to The Audit Committee. .......................... 5

                        i.     Latham's Representation of the Audit Committee in Connection with the Internal and External Investigations. ................................................. 5

                        ii.     Latham's Representation of the Audit Committee in Connection with the Change of Accountants and Item 304. ....................................................... 6

                c.     As Counsel to Individual Defendants. .......................... 7

        4.     Waiver of Subpoenaed Matters Before the 2017 Trustee Appointment. ........................................................................... 7

        5.     Use of Latham Documents On Subpoenaed Matters in this Litigation. ................................................................................ 9

        6.     The Subpoenas and Latham's Objections. ............................. 10

III.     ARGUMENT ...................................................................... 10

    A.     The Bankruptcy Trustee Does Not Hold The Privilege. ..................... 11

        1.     The Audit Committee Holds The Privilege Over the Subpoenaed Matters, Separate and Distinct From Any Corporate Privilege. .............. 11

        2.     Delivery Agent's Officers and Directors Separately Hold A Privilege Over the Subpoenaed Matters. .................................. 13

    B.     No Valid Underlying Privilege Exists For the Trustee to Assert Because Delivery Agent Waived Any Privilege Before His Appointment. ....................... 15

        1.     Delivery Agent Waived Any Privilege By Its Pre-Bankruptcy Disclosures of the Subpoenaed Matters To Third-Parties. ....................... 15

i

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

2.   Delivery Agent Waived Any Remaining Privilege While A Debtor-In-Possession When It Sold Substantially All of Its Assets in 2016. ................................................................................ 18

C.   The Court Cannot Reasonably Continue The Fiction That The Attorney-Client Privilege Will Protect The Confidentiality of the Subpoenaed Matters. ................................................................................................. 20

D.   Fairness and Equity Requires Waiver of The Attorney-Client Privilege. ............ 21

E.   The Attorney-Client Privilege Does Not Excuses Latham's Failure To Produce Documents To Which The Privilege Does Not Apply. ......................... 24

IV.   CONCLUSION.......................................................................................................... 25

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*AT&T Corp. v. Microsoft Corp.*,
5
    2003 WL 21212614 (N.D. Cal., Apr. 18, 2003) ...................................................................20

6

*United States ex rel. Barko v. Halliburton Company*,
    2014 WL 6657103 (D.D.C. 2014) ......................................................................................25
7

*In re BCE West, L.P.*,
8
    No. M-8-85, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000)................................................12

9

*Bierman v. Marcus*,
10
    122 F. Supp. 250 (D.N.J. 1954) .........................................................................................21

11

*Bisno v. U.S.*,
    299 F. 2d 711 (9th. Cir. 1961) ...........................................................................................22
12

*Bittaker v. Woodford*,
13
    331 F.3d 715 (9th Cir. 2003) ..............................................................................................16

14

*Board of Trustees of Leland Stanford Junior University v. Roche Molecular*
    *Systems, Inc.*,
15
    237 F.R.D. 618 (N.D.Cal. 2006) ........................................................................................16

16

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,
17
    2016 WL 4967716 (D. Nev. Sept. 15, 2016) .....................................................................20

18

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ............................................................................................17
19

*In re China Medical Tech., Inc.*,
20
    522 B.R. 28 (Bankr. S.D.N.Y. 2014)............................................................................12, 13

21

*Commodity Futures Trading Comm'n v. Weintraub*,
22
    471 U.S. 343 (1985).............................................................................................................13

23

*Diasonics Securities Litig.*,
    1986 WL 53402 (N.D. Cal., June 15, 1986) ................................................................15, 17
24

*Dukes v. Wal-Mart Stores, Inc.*,
25
    2013 WL 1282892 (N.D. Cal., Mar. 26, 2013)...................................................................20

26

*Federal Deposit Ins. Corp. v. W.R. Grace & Co.*,
27
    1987 WL 7810 (N.D. Ill. 1987) .........................................................................................25

28

iii

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

*Feshbach v. S.E.C.*,
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ....................................................................20

*Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.*,
    No. 93 Civ. 5125, 1996 WL 29392 (S.D.N.Y. Jan.25, 1996)...............................25

*Glidden Co. v. Jandernoa*,
    173 F.R.D. 459 (W.D. Mich. 1997) ....................................................................14

*GOT I, LLC v. XRT, Inc.*,
    2017 WL 3113408 (N.D. Ga. Feb. 28, 2017) ......................................................18

*Gottlieb v. Wiles*,
    143 F.R.D. 241 (D. Colo. 1992) .........................................................................14

*Granite Partners v. Bear, Stearns & Co., Inc.*,
    184 F.R.D. 49 (S.D.N.Y. 1999) .........................................................................11

*Haddock v. Nationwide Financial Services, Inc.*,
    2009 WL 3734059 (D. Conn. 2009) ....................................................................25

*Harris v. Wells*,
    1990 WL 150455 (D. Conn. Sept. 5, 1990) .........................................................14

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
    2007 WL 2192885 (D. Kan. 2007) ....................................................................25

*Hercules, Inc. v. Exxon Corp.*,
    434 F. Supp. 136 (D. Del. 1977).........................................................................14

*Howard v. S.E.C.*,
    376 F.3d 1136 (D.C. Cir. 2004)..........................................................................22

*In re In–Store Advertising Sec. Litig.*,
    163 F.R.D. 452 (S.D.N.Y. 1995) .......................................................................18

*In re Juniper Networks, Inc. Securities Litigation*,
    2009 WL 4644534 (N.D.Cal. 2009) ...................................................................17

*Kaufman v. Sungard Invest. Sys.*,
    05-cv-1236, 2006 WL 1307882 (D.N.J. May 10, 2006).......................................18

*In re Kennedy*,
    143 B.R. 776 (D. Colo. 1992) ............................................................................21

*Lewis v. U.S.*,
    2004 WL 3203121 (W.D. Tenn. 2004), *order aff'd*, 96 A.F.T.R.2d 2005-5300,
    2005 WL 1926655 (W.D. Tenn. 2005)................................................................23

iv

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

*Lira v. Chipotle Mexican Grill, Inc.*,
  2018 WL 2128707 (N.D.Cal. May 9, 2018 ) .......................................................................... 10

*Lopes v. Vieira*,
  688 F. Supp. 2d 1050 (E.D. Cal. 2010), *on reconsideration*, 719 F. Supp. 2d
  1199 (E.D. Cal. 2010) ........................................................................................................... 23

*McCafferty's, Inc. v. Bank of Glen Burnie*,
  1998 U.S. Dist. LEXIS 12859 (D. Md. Jan. 26, 1998) ......................................................... 16

*McFadden v. Norton Co.*,
  118 F.R.D. 625 (D. Neb. 1988) ............................................................................................. 25

*Medinol, Ltd. v. Boston Scientific Corp.*,
  214 F.R.D. 113 (S.D.N.Y. 2002) ................................................................................... 15, 17

*Moskowitz v. Lopp*,
  128 F.R.D. 624 (E.D. Pa. 1989) ............................................................................................ 22

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co., Ltd.*,
  2018 WL 5886013 (N.D. Cal. 2018) ..................................................................................... 15

*Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*,
  585 F. Supp. 2d 995 (N.D. Ill. 2008) .................................................................................... 19

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) .................................................................................... 16, 22

*Randleman v. Fidelity Nat. Title Ins. Co.*,
  2008 WL 4683297 (N.D. Ohio 2008) .................................................................................... 18

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
  1993 WL 106429 (E.D. Pa. 1993) ......................................................................................... 17

*In re Rospatch Securities Litigation*,
  1991 WL 574963 (W.D. Mich. 1991) .................................................................................... 25

*S.E.C. v. Ferrone*,
  2016 WL 824721 (N.D. Ill. Feb. 22, 2016) .......................................................................... 22

*S.E.C. v. Prince*,
  2013 WL 1831841 (D. D.C. May 2, 2013) ............................................................................ 22

*S.E.C. v. Roberts*,
  254 F.R.D. 371 (N.D. Cal. 2008) .......................................................................................... 16

*S.E.C. v. TenFold Corp.*,
  2005 WL 7874298 (D. Utah Aug. 19, 2005) ........................................................................ 22

v

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*,
  213 B.R. 433 (Bankr. S.D.N.Y. 1997)............................................................15

*In re Shopping Carts Antitrust Litigation*,
  95 F.R.D. 299, 34 Fed. R. Serv. 2d 778 (S.D.N.Y. 1982).................................25

*Sidibe v. Sutter Health*,
  2018 WL 783808 (N.D.Cal. 2018) ...........................................................11, 12

*SimpleAir, Inc. v. Microsoft Corp.*,
  No. 2:11-cv-416, 2013 WL 4574594 (E.D. Tex. Aug. 27, 2013).........................19

*Society of Professional Engineering Employees in Aerospace v. Boeing Co.*,
  C.A. No. 05-1251-MLB, 2010 WL 3083536 (D. Kan. Aug. 5, 2010) ...................18

*Soverain Software LLC v. The Gap, Inc.*,
  340 F. Supp. 2d 760 (E.D. Tex. 2004)..........................................................19

*States v. W.R. Grace*,
  439 F.Supp.2d 1125 (D. Mont. 2006) ...........................................................23

*Stooksbury v. Ross*,
  No. 3:09-CV-498, 2012 WL 3779113 (E.D. Tenn. Aug. 31, 2012).......................18

*In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*,
  1997 WL 118369 (S.D. N.Y. 1997)...............................................................17

*TAS Distributing Co., Inc. v. Cummins Inc.*,
  2009 WL 3255297 (C.D. Ill. 2009).................................................................23

*Teachers Ins. and Annuity Ass'n of America v. Shamrock Broadcasting Co., Inc.*,
  521 F. Supp. 638 (S.D. N.Y. 1981) ...............................................................24

*Teltron Inc. v. Alexander*,
  132 F.R.D. 394 (E.D.Pa.1990).....................................................................24

*Tennenbaum v. Deloitte & Touche*,
  77 F.3d 337 (9th Cir. 1996) .........................................................................16

*U.S. v. Freese*,
  2006 WL 1041820 (D. Neb. 2006) ...............................................................25

*U.S. v. Willis*,
  565 F. Supp. 1186, 13 Fed. R. ....................................................................25

*United States v. Gann*,
  732 F. 2d 714 (9th Cir. 1984) ......................................................................16

vi

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

*United States v. Graf,*
    610 F.3d 1148 (9th Cir. 2010) ...............................................................................15

*United States v. Palmer,*
    536 F. 2d 1278 (9th Cir. 1976) ..............................................................................20

*Weil v. Investment/Indicators, Research and Management, Inc.,*
    647 F.2d 18 (9th Cir. 1981) ...................................................................................11

*In re Woolworth Corp. Sec. Class Action Litig.,*
    1996 WL 306576 (S.D.N.Y. June 7, 1996) ...........................................................12

**State Cases**

*Kirby v. Kirby,*
    1987 WL 14862 (Del. Ch. July 29, 1987)...............................................................14

*Moore Bus. Forms, Inc. v. Cordant Holdings Corp.,*
    1996 WL 307444 (Del. Ch. June 4, 1996) .............................................................14

**Federal Statutes**

15 U.S.C. 78j-1(m)(5) ..................................................................................................12

Sarbanes-Oxley Act of 2002 .......................................................................................12

**Rules**

Fed. R. Civ. P. 26(b)(1)...............................................................................................10

Fed. R. Civ. P. 26(b)(5)...............................................................................................21

Fed. R. Evid. 502(a) ..............................................................................................16, 22

Fed. R. Evid. 502(b)..............................................................................................16, 22

Rule 44(b) ....................................................................................................................21

Rule 45 ........................................................................................................................10

**Other Authorities**

Joseph K. Leahy, What Due Diligence Dilemma? Re-Envisioning Underwriters'
    Continuous Due Diligence After WorldCom, 30 Cardozo L. Rev. 2001, 2013-
    14 (2009) ...............................................................................................................17

SEC Release No. 33-8220, 2003 WL 1833875 (April 9, 2003) .................................12

Notice of Motion and Motion to Compel Lathan & Watkin's Compliance With Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

# I.   INTRODUCTION

Defendants Michael R. Fitzsimmons, Peter Lai, Chris G. Power, Peter J. Goettner, Christian Borcher, Ernest D. Del, Marc S. Yi, James C. Peters, and Souheil S. Badran (collectively, the "Defendants") seek an order from the Court directing Latham & Watkins, LLP  to comply with Defendants' subpoenas, and to produce the documents and materials described therein, and provide testimony regarding the same.

Defendants are former officers and directors of Delivery Agent, Inc.  Delivery Agent filed for Chapter 11 protection in September 2016 during which time it sold substantially all of its assets to its third-party creditor Hillair Capital Management LLC ("Hillair") (which, upon the close of the sale, transferred the assets to its affiliate, Connekt, Inc. ("Connekt")) before converting its bankruptcy to a Chapter 7 liquidation in May 2017.  Only thereafter, in June 2017, was a Bankruptcy Trustee (the "Trustee") appointed.

Plaintiffs filed the instant actions against Defendants in February 2017, alleging that Defendants made false statements and omitted material information about two investigations into an H&M 2014 Super Bowl advertising campaign, its decision to change auditors, and the effect that change in auditors had on the prospect of Delivery Agent's contemplated initial IPO.

At all times, Latham served as Delivery Agent's counsel and advised its Audit Committee and its individual members with respect to: (1) the internal investigation of Delivery Agent's 2014 Super Bowl campaign (RFPs[1] 1B and 10); (2) the external, third party investigation of the 2014 Super Bowl campaign and the resulting remediation plan (RFPs 1B and 1C); (3) the disclosures in Financing Documents (*i.e.*, the Series F and G Purchase Agreements, Schedule of Exceptions, and convertible notes for which Defendants signed Consents) regarding potential liability arising out of the 2014 Super Bowl ad campaign (RFPs 1A, 2, 4, 5, 6, and 7); (4) the decision to change IPO auditors from Deloitte & Touche ("Deloitte") to Grant Thornton, LLP ("Grant Thornton") (RFPs 1D, 3, and 11); and (5) the Form S-1, Item 304 to the Securities and Exchange Commission

---

[1] "RFPs" refers to the specific Requests For Production in Defendants' subpoenas to Latham.  Defendants served 14 RFPs on Latham.  Declaration of Giovanna Ferrari ("Ferrari Dec.") at ¶10, Ex. B.

1

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

("SEC") which required a statement of why Delivery Agent changed auditors (RFPs 1A and 1D) (the "Subpoenaed Matters").[2]

In connection with their claims, Plaintiffs subpoenaed from Connekt all documents it acquired from Delivery Agent in its possession, custody or control, which included over 27,000 attorney-client communications and attorney work product documents; **over 12,000 of those involved Latham.** Ferrari Dec. at ¶¶22-23.[3]  All of those Connekt documents were produced to Plaintiffs in 2019. The Trustee has taken no position on whether it holds any privilege over the documents disclosed and any undisclosed documents regarding the same subject matter, or whether the privilege was waived before his appointment.  Even so, no reasonable basis exists to maintain the fiction that the Subpoenaed Matters are confidential; once the proverbial cat is out of the bag, the privilege's underlying purpose of maintaining confidentiality is defeated and the communications are no longer worthy of protection.

Given Plaintiffs' ongoing and selective use of the attorney-client communications and attorney work-product produced by Connekt,[4] and to defend against Plaintiffs' claims, Defendants subpoenaed Latham, seeking production of documents regarding the Subpoenaed Matters. Latham does not challenge the relevance of the requested materials to this action.  Rather, it objects to the subpoenas on the grounds that it seeks the production of documents protected from disclosure by the attorney-client privilege and the attorney work product doctrine. Thus, Latham states that it will

---

[2] RFP 1 subparts E-H and RFP 12 (regarding the likelihood of an IPO and financial factors effecting the same after the change in auditors), RFPs 2 and 14 (communications and documents to Plaintiffs); RFP 8 (referencing documents wherein the investigations and change of accountants allegedly should have been disclosed); RFP 9 (regarding the termination of individuals involved in the 2014 Superbowl ad campaign); and RFP 13 (communications with third parties regarding the investigations and change of accountants) are necessarily subsumed by these 5 categories because the 5 categories and the RFPs referenced in this footnote all relate to Latham's involvement in the investigations into the 2014 Superbowl ad campaign and their recommendation to change auditors, which Plaintiffs allege should have been disclosed to investors and caused the loss of Plaintiffs' investments when an IPO became impossible.

[3] Latham's communications and work product are in over 19,700 documents produced by the parties and third parties.  Ferrari Dec. at ¶25.

[4]  Plaintiffs have used over 85 of the documents in all 11 depositions taken so far -- including third party depositions -- while seeking to preclude Defendants from using them through a Motion to Strike. Ferrari Dec. at ¶¶28-40, Exs. O-T; *see* 17-cv-01232 Dkt. 102.

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

1     not produce documents until it receives either (1) direction from the holder of the privilege; or (2) a

2     court order determining whether otherwise applicable privileges or protections have been waived.

3          Latham's objections are not well taken.  As set forth more fully below, Latham ignores that

4     both the Audit Committee and Delivery Agent's former officers and directors hold an independent

5     privilege in the Subpoenaed Matters separate and apart from the corporate privilege and, thus, can

6     waive it.  **Latham, in fact, admitted the Audit Committee's independent privilege on the**

7     **topics at issue in a 2015 email.**  Ferrari Dec. at ¶41, Exs. U.  Moreover, even if a corporate

8     privilege attached, no valid underlying privilege remains in the Subpoenaed Matters for the Trustee

9     to assert because Delivery Agent waived the privilege before his appointment.  **Indeed, as will be**

10    **demonstrated below, the attorney-client communications with Latham were waived in 2014**

11    **and 2015, when Delivery Agent was still a going concern (*i.e.*, even before bankruptcy**

12    **proceedings)**.  *See*, *e.g.*, *Id.,* wherein Latham says anything distributed outside the Company, like

13    the internal investigation report and anything shared with Deloitte, "is not a privileged

14    communication."  Certainly, no reasonable basis exists to maintain the fiction that attaching the

15    attorney-client privilege to Latham's communications regarding the Subpoenaed Matters will

16    maintain their confidentiality.  And given Plaintiffs' conduct, fairness and equity also dictate that

17    any privilege attached to the Subpoenaed Matters be waived.

18          In any event, the attorney-client privilege does not excuse Latham's failure to produce non-

19    privileged documents or communications (*i.e.*, RFP 2 seeking communications between Latham

20    and Plaintiffs, RFP 13 seeking communications between Latham and third parties, and any

21    documents where Latham provided Defendants with findings of fact rather than advice).

22    Accordingly, Defendants respectfully request the Court enter an order finding a waiver of the

23    attorney-client privilege and work-product protections applicable to the Subpoenaed Matters and

24    compelling Latham to comply with the subpoenas.

25    **II.      FACTUAL BACKGROUND**

26          **1.      Plaintiffs, Delivery Agent, and Defendants.**

27          Plaintiffs are sophisticated venture-stage investors who invested in DA between 2014 and

28    2016, purportedly based on the promise Delivery Agent would go public.

3

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

Delivery Agent, a technology company which enabled direct purchases of merchandise through multi-channel media, was founded in the mid-2000s. From 2013 and 2016, Delivery Agent considered an IPO. At various times, Mark Smith, Brian Erb, and Mark Epstein were Delivery Agent's General Counsel. Declarations of Mark Smith ("Smith Dec.") at ¶1, Jeffrey Hagan ("Hagan Dec.") at ¶¶3-4. Delivery Agent's Board included, at varying times, all Defendants except Lai who was an Officer. Peters and Fitzsimmons were also Officers. Defendants Power, Borcher, Goettner, Badran, Del, and Yi were outside directors. *See* Amended Complaints ("FACs").

### 2.      Delivery Agent's Audit Committee.

Delivery Agent's Board had committees tasked with specific matters. The Audit Committee was tasked with handling any matters associated with auditors and finances, and working with Delivery Agent's CFOs, Mike Novelly ("Novelly") and Jeffrey Hagan ("Hagan"). Hagan Dec. at ¶2. The Audit Committee was chaired by outside director Defendant Power (the CFO of LifeLock); outside director Defendants Goettner and Borcher were the other members. *See* FACs.  From 2014-2015, in addition to routine Audit Committee duties, the Board delegated the handling of two investigations into Delivery Agent's 2014 Superbowl ad campaign, which ultimately required the Audit Committee to consider and approve a remediation plan, to consider and approve a change in auditors from Deloitte to Grant Thornton, to consider and approve draft Item 304 ("Change In Auditors") language for Delivery Agent's IPO filing documents. Declaration of Chris Power ("Power Dec.") at ¶¶1-24.[5]

### 3.      Latham.

---

[5] The scope of the Audit Committee's delegation from the Board relates to every aspect of Plaintiffs' case—the core of Plaintiffs' claims are that the investigations into the 2014 Superbowl ad campaign and the change in auditors should have been disclosed (in, at the least, the Financing Documents) to investors. According to Plaintiffs, the required Item 304 language describing the basis for changing auditors defeated Delivery Agent's ability to go public, and caused Delivery Agent's bankruptcy and the loss of Plaintiffs' investments. Plaintiffs have sued Defendants for violation of securities laws (10b5 and 20a) and California Corporations Code sections for acts and omissions related to the investigations, the remediation plan, the change in auditors, and the 304 language. Defendants' case necessarily relies on defeating scienter and supporting the good faith defense of the California Code and proving their business judgment and advice of counsel defenses. While advice of counsel requires showing legal advice from Latham, other matters are not so limited and can be supported by any information provided by Latham to Defendants (findings of fact, updates, drafts of the Financing Documents, etc.).

4
Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

### a.     As Principal Legal Counsel.

Latham served as Delivery Agent's principal legal counsel. Latham attended every Board meeting and drafted all Board meeting minutes.  Because of Latham's particular expertise in corporate matters, Delivery Agent General Counsel Mark Smith ultimately deferred to Latham in all matters relevant to this Motion. Smith Dec. at ¶¶2-3. Latham drafted the Financing Documents which form the sole basis for Plaintiffs' claims against several Defendants, and frequently sent edited versions of those documents directly to (without copying Defendants) investors, including Plaintiffs. Ferrari Dec. at ¶¶13, 20, 38, Exs. K and S; Declarations of James Peters ("Peters Dec.") at ¶5; and Michael Fitzsimmons ("Fitzsimmons Dec.") ¶2.

### b.     As Counsel to The Audit Committee.

#### i.     Latham's Representation of the Audit Committee in Connection with the Internal and External Investigations.

On or about February 6, 2014, allegations were made that a few Delivery Agent employees (none of whom are defendants) falsified data from a February 2, 2014 Super Bowl advertisement in which Delivery Agent partnered with H&M to sell David Beckham underwear. Delivery Agent employees rather than third parties had purchased a majority of the underwear.  After being made aware of these allegations, the Audit Committee promptly arranged a meeting for February 8, 2014 and requested that Latham attend the meeting to provide legal advice.  Power Dec. at ¶¶6-11; Smith Dec. at ¶4. At the meeting, Latham advised the Audit Committee regarding how to proceed, including whether an internal investigation should be commenced. *Id*. The Audit Committee, pursuant to Latham's advice, decided to proceed with an internal investigation.  *Id*.

The Audit Committee instructed the general counsel, Mark Smith, to conduct the independent internal investigation on behalf of the Audit Committee, report to the Audit Committee throughout his investigation and, ultimately, present his findings directly to the Audit Committee.  *Id*. Latham provided the Audit Committee with legal advice throughout the investigation, including by recommending best practices, explaining how to keep the investigation independent, drafting an internal investigation summary for the Audit Committee and advising how to address the internal investigation's findings.  *Id.*; Ferrari Dec. at ¶14, Ex. E.

5

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1    After Mr. Smith presented the internal investigation findings to the Audit Committee,

2    Latham advised the Audit Committee about whether an investigation by an outside law firm should

3    be conducted and recommended potential law firms to conduct the external investigation on behalf

4    of the Audit Committee. Power Dec. at ¶¶12-13; Smith Dec. at ¶5. Upon Latham's advice and

5    recommendation, the Audit Committee retained Bergeson LLP ("Bergeson") in the spring of 2014

6    to conduct the external investigation. *Id.*; Ferrari Dec. at ¶26 Exs. L and M. Latham provided the

7    Audit Committee with guidance throughout the course of the external investigations and drafted a

8    summary of the external investigation findings for the Audit Committee.  Power Dec. at ¶¶12-13;

9    Smith Dec. at ¶5; Ferrari Dec. at ¶¶16-17, Exs. G and H.

10    After the internal and Bergeson investigations were completed, the Audit Committee

11    worked closely with Latham to develop a remediation plan.  Power Dec. at ¶¶14-15; Smith Dec. at

12    ¶5; Ferrari Dec. at ¶¶ 17, 37, Exs. H and R.  Patrick Pohlen of Latham was in very frequent

13    communication with the Chairman of the Audit Committee, Defendant Power, regarding the

14    specifics of the remediation plan to determine if it was sufficiently comprehensive and reasonably

15    designed to achieve the goals for remediation of the behavior. Power Dec. at ¶¶14-15.  Mr. Pohlen

16    discussed each of the subparts of the remediation plan with the Audit Committee, and advised that

17    the provisions of the remediation plan properly addressed the findings of the investigations. Since

18    the remediation plan was developed in reliance on the advice of Latham given only to the Audit

19    Committee, the Audit Committee reasonably believed that Latham was acting as its counsel. *Id*.

20    As counsel for the Audit Committee, Mr. Pohlen ultimately sent the remediation plan to the full

21    Board who thereafter approved it.  *Id.*

22                    ii.    **Latham's Representation of the Audit Committee in
                            Connection with the Change of Accountants and Item
23                            304.**

24    After learning of the internal investigation described above, Delivery Agent's then auditor,

25    Deloitte, decided to suspend its work on Delivery Agent's financials. Nevertheless, in the hopes

26    that Deloitte would restart its auditing work, the Audit Committee kept Deloitte apprised of all

27    findings from the internal and Bergeson investigations, including by presenting the remediation

28    plan and the Bergeson report to Deloitte. Power Dec. at ¶¶16; Ferrari Dec. at ¶¶17 and 37; Exs. H

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

and R.  However, Deloitte refused to restart its work. On July 29, 2014, after receiving legal advice from Latham, the Board decided to switch auditors from Deloitte to Grant Thornton.  Power Dec. at ¶¶16-18; Smith Dec. at ¶6; Ferrari Dec. at ¶17, Ex. H, *see* deKay testimony.

Under Item 304 of the SEC's regulations, Delivery Agent, if it made a filing with the SEC of an S-1 for an IPO, would be required to explain this change in accountants in that S-1. The Audit Committee relied upon Latham heavily in connection with this Item 304. Power Dec. at ¶¶18-21. Specifically, Latham drafted the initial Item 304 language explaining the change of accountants, which was sent to Deloitte on behalf of the Audit Committee. *Id.*; Ferrari Dec. at ¶18, Ex. I (*e.g.*, CONNEKT 0293522-35); Smith Dec. at ¶7. Latham also revised and edited subsequent iterations of the language after Delivery Agent's former auditor, Deloitte, added specificity about the investigations and remediation plan to the Item 304. *Id.* Latham provided the Audit Committee with comprehensive advice about the specific language of the Item 304 throughout the Committee's discussions with Deloitte. *Id.*  Latham further attended every Audit Committee meeting, during which it provided the Committee with legal advice, including advice concerning the Item 304/IPO.

In 2015, Latham admitted that the privilege related to the activities described in this subsection b. belonged to the Audit Committee.  Ferrari Dec. at ¶41, Ex. U.

### c.      As Counsel to Individual Defendants.

Latham advised each of the individual defendants on their fiduciary duties and Mr. Fitzsimmons on whether or not he should disclose the investigations and change in accountant. Ferrari Dec. at ¶20, Ex. K; Fitzsimmons Dec. at ¶4, Exs. A and B.

### 4.      Waiver of Subpoenaed Matters Before the 2017 Trustee Appointment.

To the extent Delivery Agent held any privilege, **from 2014 to 2015** while it was still a going concern, Delivery Agent voluntarily disclosed privileged communications and work product to third parties—including, but not limited to, its outside auditors (Deloitte and Grant Thornton), proposed but not yet retained auditors (Grant Thornton), potential new hires (Brian Erb), "mentors" (Lionsgate), underwriters (Credit Suisse, Barclays, Bank of Montreal, Deutsche Bank, and Macquarie), underwriters' counsel (Davis Polk), potential investors (BTIG), and Plaintiffs—

7

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

regarding the two investigations, the remediation plan, the change in auditors, the 304 language which chronicled the investigations, the remediation plan, and change in auditors, and disclosures in the Financing Documents. Ferrari Dec. at ¶¶13-20, 41, Exs. E-K, U; Hagan Dec. at ¶¶1-5, Ex. A; Peters Dec. at ¶¶1-5, Ex. A; Fitzsimmons Dec. at ¶¶1-7, Ex. A; Smith Dec. at ¶¶1-7.

For example, Latham's advice on the internal investigation was initially disclosed, in Spring 2014, to Deloitte and Lionsgate.  Ferrari Dec. at ¶15, Ex. F at Novelly testimony and CONNEKT0547712-13; *see also* ¶41, Ex. U (**wherein Latham admits, in 2015, that the privilege related to the internal investigation was waived**).  Latham's advice on both the internal and external investigations, Latham's remediation plan based on Bergeson's report, Latham's advice to change accountants, and Latham's advice on the 304 was disclosed to:

- Deloitte in 2014 (when it was Delivery Agent's auditor) and 2015 (when it was no longer Delivery Agent's auditor) (Ferrari Dec. at ¶¶15, 17, 19, 41, Exs. F, H, J, U; Peters Dec. at ¶¶1-4;  Smith Dec. at ¶7; Power Dec. at ¶¶16,18);

- Potential new auditor Grant Thornton in Summer 2014 (Ferrari Dec. at ¶17, Ex. H, deKay testimony);

- Potential new employee Brian Erb in 2015 (Hagan Dec. at ¶¶3-4, Ex. A);

- Underwriters and underwriters' counsel in 2014 and 2015 (Ferrari Dec. at ¶19, Ex. J; Hagan Dec. at ¶5; Fitsimmons Dec. at ¶5);

- Potential new investors BTIG in 2015 (Fitzsimmons Dec. at ¶6); and

- Plaintiffs in 2015 (*e.g.*, Peters Dec. at ¶¶3-4, Ex. A).

*See generally*, Ferrari Dec. at ¶¶13-20, 41.  Latham's draft and final Financing Documents were disclosed to third parties and Plaintiffs in 2014 and 2015. (Ferrari Dec. at ¶20, 38, Exs. K and S).

**In September 2016**, Delivery Agent filed for Chapter 11 bankruptcy.  Request for Judicial Notice "RFJN"), Ex. A. During its pendency, Delivery Agent retained control over all of its property and continued managing its business as debtors-in-possession. Before confirmation of a reorganization plan, however, Delivery Agent—in "an appropriate exercise of [its] business judgment"— agreed to sell substantially all" of Delivery Agent's assets to a company named Hillair.  As part of that transaction, Delivery Agent expressly agreed to transfer to Hillair both its "computer and computer-related hardware (including, computers, file servers, facsimile servers, scanners, printers, and networks)" as well as its "Documents," defined to include "all files,

8

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1   documents, instruments, books, reports, records. . . letters, . . . and other similar materials, in each

2   case whether or not in electronic form." RFJN, Ex. B at §§ 1.1, 2.1(f), 2.1(i)).  On November 18,

3   2016, shortly after their acquisition, Hillair then transferred Delivery Agent's assets to Connekt. *Id.*

4   at § 12.8. In 2017, the bankruptcy was converted to a Chapter 7 and the current Trustee was

5   appointed.  RFJN, Ex. C. The Trustee is aware of the privilege issues, the subpoenas, and that this

6   Motion will be made and has not taken any position on who holds privilege on Latham's advice

7   and whether privilege was waived prior to his appointment. Declaration of Gregory Markel

8   ("Markel Dec.") at ¶¶ 1-7.

9        **5.**        **Use of Latham Documents On Subpoenaed Matters in this Litigation.**[6]

10        Plaintiffs served a subpoena on Connekt on or around July 25, 2018.  Ferrari Dec. at ¶21.

11   Connekt provided Defendants with all of the Delivery Agent documents it had received in the asset

12   sale, and Defendants produced those documents to Plaintiffs in March and May 2019.  Ferrari Dec.

13   at ¶22.  In total, approximately 210,000 Delivery Agent documents were produced through that

14   production. *Id.* **Within those documents were the approximately 12,000 documents to, from,**

15   **or by Latham**.  *Id.*  **Thousands** of the documents in the Connekt production showed Latham's

16   advice and work product were shared with third parties prior to filing Delivery Agent filing for

17   bankruptcy.  *Id.* at ¶¶23, 25.  Third parties and Plaintiffs have also produced **thousands** of

18   communications between them and Latham regarding Delivery Agent. *Id.*

19        Plaintiffs have used Latham advice and work product in every single deposition to date and

20   clearly intend to use those documents to support their case while demanding Defendants be

21   precluded from doing so.  *See* Plaintiffs' Motion to Strike. The number of deposition exhibits that

22   were to, from and/or drafted by Latham are as follows: 1 at the deposition of Mac Hagel (third

23   party), 1 at the deposition of Steve Lumboski (third party), 17 at the deposition of Michael Novelly

24   (third party), 14 at the deposition of Timothy de Kay (third party), 5 at the deposition of

25    

26   [6] Plaintiffs also contend Murphy Pearson, Orrick Harrington & Sutcliff, and Bergeson,
LLP were counsel with respect to Item 304. Thousands of documents with their

27   communications/work product have already been produced by the parties and third parties to this
litigation, and many have been used in depositions.  Any such privilege with regard to Item 304

28   has been waived.  Ferrari Dec. at ¶¶19, 22, 24, Ex. J.

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

Christopher Nam (third party), 3 at the deposition of Patrick Kratus (third party), 1 at the deposition of Peter Lai, 8 at the deposition of Tej Shah (third party), 10 at the deposition of Souheil Badran, 18 at the deposition of Christian Borcher, and 14 at the deposition of James Peters. Many more referencing Latham and/or its advice have been used by Plaintiffs in deposition.  *Id.* at ¶29. In Defendant Peters' deposition, **which was taken by Plaintiffs after they filed their Motion to Strike**, 22 of the 32 exhibits introduced by Plaintiffs were communications to and from, drafted by, or referencing Latham.  *Id.* at ¶34. Plaintiffs did not mark that transcript confidential. *Id.*  In Defendant Borcher's deposition, 20 of the 30 exhibits introduced were communications to and from, drafted by, or referencing Latham. *Id.* at ¶35.  Plaintiffs did not mark Mr. Borcher's deposition confidential.  *Id.*  Plaintiffs have specifically elicited testimony regarding advice given by Latham when deposing Defendants and former Delivery Agent employees.  *Id.* at ¶36.

### 6.        The Subpoenas and Latham's Objections.

On July 11, 2019, Defendants served subpoenas on Latham in each case.  Ferrari Dec. at ¶10, Ex. B. The 14 RFPs asked for documents on the Subpoena Matters.  On August 6, 2019, Latham objected to all 14 RFPs stating that it will not produce "unless and until it receives either (i) direction from the holder of the privilege, **or** (ii) a court order determining whether otherwise applicable privileges or protections have been waived, and, if so, the extent of any such waiver." *Id.* at ¶11, Ex. C, emphasis added.  On August 19, 2019, Defendants served deposition subpoenas on two Latham counsel.  Latham opposes the deposition subpoenas for the same reasons it opposed the document subpoenas.  Ferrari Dec. at ¶12, Ex. D.

## III.    ARGUMENT

The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b).  *See, e.g., Lira v. Chipotle Mexican Grill, Inc.*, 2018 WL 2128707, at *2 (N.D.Cal. May 9, 2018 ) (explaining relationship between Rule 45 and Rule 26).  Fed. R. Civ. P. 26(b)(1) (discovery permitted "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").  Latham does not challenge the relevance of the matters sought by Defendants' subpoenas, or Defendants' need for the materials to support its defenses.  Rather, it objects on the grounds that that the subpoenas seek the production

10

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

1   of documents and testimony protected from disclosure by the attorney-client privilege and the

2   attorney work product doctrine.

3       As with all evidentiary privileges, the burden of proving that the attorney-client privilege or

4   the work-product doctrine applies rests not with the parting contesting the privilege, but with the

5   party asserting it.  *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25

6   (9th Cir. 1981) (attorney-client privilege); *Sidibe v. Sutter Health*, 2018 WL 783808, at *2

7   (N.D.Cal. 2018) (work-product).   To meet its burden, the asserting party must affirmatively

8   establish that the neither the privilege nor the work-product protection has been waived.  *Weil*, 647

9   F.2d at 25; *Granite Partners v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999)

10  (party asserting work product protection must affirmatively establish nonwaiver).

11      Latham has not met its burden; indeed, it has made no effort to do so.  That is because it

12  cannot:  Not only do the Audit Committee, and Delivery Agent's former officers and directors hold

13  an independent privilege in the Subpoenaed Matters separate and apart from the corporate privilege

14  (which they can waive), even if a corporate privilege attached, no valid underlying privilege

15  remains in the Subpoenaed Matters for the Trustee to assert because Delivery Agent waived the

16  privilege years before his appointment.   And certainly, given Plaintiffs' cavalier use of the

17  purportedly privileged documents, fairness and equity also dictate that any privilege attached to the

18  Subpoenaed Matters be waived.  The attorney-client privilege does not excuse Latham's failure to

19  produce non-privileged documents or communications.

    **A.**    **The Bankruptcy Trustee Does Not Hold The Privilege.**

21      Latham's refusal to produce responsive documents "until it receives…further direction

22  from the holder of the privilege" ignores that the Audit Committee—and not the Trustee—holds

23  the privilege in the Subpoenaed Matters separate and apart from the corporate privilege.

    **1.**    **The Audit Committee Holds The Privilege Over the Subpoenaed Matters, Separate and Distinct From Any Corporate Privilege.**

26      The attorney-client privilege protects from disclosure communications between an attorney

27  and a client, made in confidence, for the purpose of rendering or obtaining legal advice.  Although

28  a corporation may be the client of an attorney, it is an intangible entity that can act only through its

11

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1  authorized agents. Consequently, an attorney's relationship and its communications are not with a

2  corporate client, but rather with its managing agents.  Circumstances may thus arise where an

3  agent's communication with counsel gives rise to a separate attorney-client relationship with

4  counsel, establishing an independent privilege separate and distinct from the corporate privilege.

5      Importantly, courts recognize that an audit committee of a corporation's board of directors

6  is legally distinct from both the board as a whole and the corporation which it serves, and enjoys an

7  identity and legal privileges distinct from either the larger board or the corporation.[7] *See In re BCE*

8  *West, L.P.*, No. M-8-85, 2000 WL 1239117, at *2 (S.D.N.Y. Aug. 31, 2000) ("Because the Special

9  Committee is a separate and distinct group from the Board of Directors, with separate legal

10  representation, the privilege afforded it is not the privilege of the corporation, but rather, is the

11  privilege of the Special Committee."); *In re Woolworth Corp. Sec. Class Action Litig.*, 1996 WL

12  306576, at *1 (S.D.N.Y. June 7, 1996) (recognizing the special committee of the board as the

13  attorney's client for privilege purposes). *In re China Medical Tech., Inc.*, 522 B.R. 28, 37 (Bankr.

14  S.D.N.Y. 2014) (audit committee of debtor, and not debtor, owned privileges, including attorney-

15  client privilege, associated with legal services provided to committee).

16      Although Latham generally served as corporate counsel to Delivery Agent, it separately

17  and independently provided legal services to the Audit Committee and its members with respect to

18  the Subpoenaed Matters.  Power Dec. at ¶¶1-24; Ferrari Dec. at ¶41, Ex. U. Consistent with its

19

20      [7] In fact, an audit committee's distinct privilege was singled out for special protection by

21  Congress when it enacted the Sarbanes-Oxley Act of 2002.  *See* 15 U.S.C. 78j-1(m)(5) ("Each audit committee shall have the authority to engage independent counsel and other advisers, as it

22  determines necessary to carry out its duties.").  In its official release implementing Section 301 of Sarbanes-Oxley, the SEC explained that the provision relating to audit committees, and the

23  privileges inherent in it, is critical to the proper functioning of a company's audit committee: "To perform its role effectively ... an audit committee may need the authority to engage its own

24  outside advisors ... as it determines necessary apart from counsel or advisors hired by management, especially when potential conflicts of interest with management may be apparent."

25  SEC Release No. 33-8220, 2003 WL 1833875, at *9 (April 9, 2003). The audit committee function, in turn, is central to the integrity of a corporation's financial reporting process, which

26  was both the spur and the goal of Sarbanes-Oxley.  *See Id.* at *19 (April 9, 2003) ("The audit committee provides independent review and oversight of a company's financial reporting

27  processes, internal controls and independent auditors. It provides a forum separate from management in which auditors and other interested parties can candidly discuss concerns.").

28

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

purpose and responsibilities, the Audit Committee exercised independent oversight over the corporation's financial reporting and the company's legal and regulatory compliance separate from Delivery Agent.  Power Dec at ¶¶1-24.  In this capacity—and as it was expressly empowered to do—the Audit Committee independently retained and separately sought Latham's advice on: (1) the two internal investigations into the 2014 Superbowl ad campaign, (2) the resulting remediation plan, (3) the change in auditors, including the disclosures required by S-K 304, the firing of Novelly and other individuals, and other financial and auditor issues.[8] *Id.* Consistent with accepted principles of corporate governance, Latham's advice and recommendations were provided in confidence only to the Audit Committee, and without the participation of the corporation or its management—particularly as many of the issues on which Latham advised the Audit Committee related to members of the Board of Directors and other senior management.

Under such circumstances, the Audit Committee and its members hold their own privilege over the Subpoenaed Matters separate and distinct from that of the corporation.  Because such privilege is not the corporate privilege, the Trustee has no control over it and the Audit Committee and its members are free, as they do so here, to waive it.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 350 (1985) (Although a bankruptcy trustee may control the corporate privilege, it has no control over the privileges of parties other than the corporation).

## 2. Delivery Agent's Officers and Directors Separately Hold A Privilege Over the Subpoenaed Matters.

Courts have similarly recognized that because a corporation's officers and directors are responsible for the proper management of the corporation, they must be treated as a client and joint

---

[8] In its role as counsel for the Audit Committee, Latham attended meetings with the AC and provided legal advice about the process to be used for the investigations, drafted summaries of the investigations for the AC to review, recommended the outside investigator to be used to make factual findings, hosted that investigator's presentation on his findings and instructed attendees not to keep a copy of the presentation, created and recommended the investigation remediation plan for the AC to approve, drafted and negotiated terminations for Novelly and Gabe Greenberg - the employee who sent bad data, determined a change in auditors was required and recommended GT, drafted and negotiated the Item 304 language, and drafted and disseminated the Financing Documents which did not disclose the investigations or change of accountants.  Power Dec. at ¶¶1-24.

13

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

1   holders of the privilege when legal advice applicable to all is rendered to one or more of its officers

2   or directors.  *See Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 473 (W.D. Mich. 1997) ("directors

3   have a right to access attorney communications of the company relating to the time they served as

4   directors" because the entire board is the client of the corporation's counsel); *Harris v. Wells*, 1990

5   WL 150455, at 3-4 (D. Conn. Sept. 5, 1990) (director could not assert attorney-client privilege

6   against his fellow corporate directors); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 145  (D.

7   Del. 1977) ("Since a corporation acts only through its representatives the Court must distinguish

8   between those employees who act as representatives of the corporation and those who do not. Only

9   the former qualify as "clients" for the purpose of the privilege.").

10      Under this rationale, courts have rejected a corporation's attempts to withhold as privileged

11  documents sought by former officers and directors.  *See, e.g., Gottlieb v. Wiles*, 143 F.R.D. 241,

12  247 (D. Colo. 1992) (granting former director's motion to compel attorney-client privileged and

13  work product protected documents from corporation generated during his tenure); *Kirby v. Kirby*,

14  1987 WL 14862 at *7 (Del. Ch. July 29, 1987) (ordering corporation to produce documents to

15  former director, explaining "[t]he directors are all responsible for the proper management of the

16  corporation, and it seems consistent with their joint obligations that they be treated as the 'joint

17  client' when legal advice is rendered to the corporation through one of its officers or directors"");

18  *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, 1996 WL 307444 at*4 n. 4 (Del. Ch. June 4,

19  1996) (clarifying that when a lawyer advises a corporation there is a single client, the entire board,

20  and ordering production of documents to plaintiffs, former directors of corporation).

21      All Defendants were officers or directors of Delivery Agent and the individuals through

22  which Latham passed its legal advice related to the Subpoenaed Matters.  Defendants approached

23  Latham on numerous occasions for the purpose of seeking legal advice, making it clear that they

24  were doing so in their individual capacity rather than their representative capacity (e.g., with

25  respect to their individual fiduciary duties), and Latham plainly saw fit to communicate with

26  individual Defendants in their individual capacities.  Ferrari Dec. at ¶27, Ex. N (wherein Latham

27  provided each Defendant individual advice on their fiduciary duties to Delivery Agent -- the issue

28  at the core of this securities litigation); Fitzsimmons Dec. at ¶¶3-4, Exs. A and B. (wherein Latham

14

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

advised Mr. Fitzsimmons not to disclose the investigations or the change in auditors to investors -- exact factual matter at issue in this litigation).  Surely, Latham is sophisticated enough to recognize possible conflicts could arise, but saw fit to communicate with Defendants on their individual liability. Each individual defendant, therefore, can claim a personal privilege with Latham's counsel.  *See United States v. Graf*, 610 F.3d 1148, 1159–60 (9th Cir. 2010) (adopting test established by the Third Circuit to determine claims of personal privilege with a client corporation's counsel).  Each, therefore, are properly clients of Latham—separate and distinct from the corporate client—for purposes of the attorney-client privilege with the power to waive it.

**B.     No Valid Underlying Privilege Exists For the Trustee to Assert Because Delivery Agent Waived Any Privilege Before His Appointment.**

Even if a corporate privilege attached, no valid underlying privilege remains in the Subpoenaed Matters for the Trustee to assert because the privilege was waived before his appointment.  *See Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 439–40 (Bankr. S.D. N.Y. 1997) (Although control of the corporate privilege passes to an appointed bankruptcy trustee upon the corporation's bankruptcy, the trustee acquires no more right to assert the privilege than the entity controlling the privilege possessed before the appointment).

**1.     Delivery Agent Waived Any Privilege By Its Pre-Bankruptcy Disclosures of the Subpoenaed Matters To Third-Parties.**

The disclosure of a privileged communication to a third party waives the attorney-client privilege that attached to the communication.  *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*, Ltd., 2018 WL 5886013, at *2 (N.D. Cal. 2018), *citing Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  Likewise, disclosure of work-product protected documents to a third party not aligned in interest with the privilege holder also waives any work product protection attached to the communication. *Diasonics Securities Litig.*, 1986 WL 53402 (N.D. Cal., June 15, 1986) (disclosure of work product to third party whose interests may not have been aligned waives work product protection); *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) (same).

The scope of such waiver is not limited solely to the communications disclosed, but rather

15

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1   extends to any undisclosed communication or work product on the same subject matter. *Phoenix*

2   *Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) ("the voluntary

3   disclosure of the attorney communication constituted a waiver of the privilege as to all other such

4   communications on the same subject matter. This is, of course, black letter law."); *See, e.g., S.E.C.*

5   *v. Roberts*, 254 F.R.D. 371, 378 (N.D.Cal. 2008) (When either privilege [attorney-client or work

6   product] is waived, its scope extends to "all communications on the same subject matter ... so that a

7   party is prevented from disclosing communications that support its position while simultaneously

8   concealing communications that do not."); *Board of Trustees of Leland Stanford Junior University*

9   *v. Roche Molecular Systems, Inc.*, 237 F.R.D. 618, 623 (N.D.Cal. 2006) (treating the scope of the

10  waiver of attorney-client privilege and work product protection as the same—extending to

11  undisclosed documents on the same subject matter—because the voluntary disclosure substantially

12  increased the possibility of an opposing party obtaining the privilege and thus defeated the policy

13  underlying work product protection); *see also* Fed. R. Evid. 502(a), (b).

14      Importantly, whether the privilege holder had the subjective intent to waive the privilege is

15  irrelevant; the focus instead is on the act of disclosure to a party outside the attorney-client

16  relationship. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("we have

17  admonished that the focal point of privilege waiver analysis should be the holder's disclosure of

18  privileged communications to someone outside the attorney-client relationship, not the holder's

19  intent to waive the privilege"); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 n. 4 (9th Cir.

20  2003) ("an express waiver need not be effectuated by words or accompanied by the litigant's

21  subjective intent") (citations omitted).  As a result, to establish an applicable attorney-client

22  privilege, the party asserting the privilege must affirmatively demonstrate non-waiver. *United*

23  *States v. Gann*, 732 F. 2d 714, 723 (9th Cir. 1984); [*see also McCafferty's, Inc. v. Bank of Glen*

24  *Burnie*, 1998 U.S. Dist. LEXIS 12859, *17–20 (D. Md. Jan. 26, 1998) (simply claiming did not

25  know how third party obtained privilege documents insufficient for privilege holder to satisfy

26  burden to show non-waiver).

27      Tellingly, while it asserts the attorney-client and work-product doctrine as the basis for its

28  refusal to produce responsive documents, Latham makes no effort to demonstrate affirmatively the

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

existence of the privilege and its non-waiver.  That is because it cannot make the requisite showing; indeed, not only did Defendants hold the privilege with the power to waive it, Delivery Agent also waived any privilege attached to the Subpoenaed Matters years before it entered into bankruptcy through its disclosures of a significant portion of its communications with Latham and/or Latham's work product to various third-parties.

Specifically, between 2014 and 2015—well before it entered into bankruptcy—Delivery Agent voluntarily disclosed a number of its privileged communications with Latham and/or Latham's privileged work product regarding the two investigations, the remediation plan, the change in auditors, and the 304 language which chronicled the investigations, and drafts of the Financing Documents to various parties outside of the attorney-client relationship, including but not limited to its outside auditors,[9] proposed but not yet retained auditors, potential new hires, "mentors," underwriters, underwriters' counsel, potential investors, and Plaintiffs.[10]  *See* Section II,

---

[9] Courts have routinely found voluntary disclosures to auditors waive the attorney-client privilege and work-product protection.  *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Pennzoil concedes that the district court was correct in ordering disclosure of the documents actually provided to the outside auditor."); *In re Juniper Networks, Inc. Securities Litigation*, 2009 WL 4644534, at *2 (N.D.Cal. 2009) ("even if the attorney-client privilege initially attached to the communications, the Audit Committee's disclosure of the substance of the communications to Juniper's outside auditors effected a waiver of the privilege"); *In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, 1997 WL 118369, *3 (S.D. N.Y. 1997) (corporation waived privilege by disclosing results of an internal investigation of company's accounting practices, policies and procedures performed by outside law firm to auditor in order to obtain an unqualified audit opinion); *Diasonics Securities Litig.*, 1986 WL 53402 at * (N.D. Cal., June 15, 1986) (concluding that the work product protection did not apply to documents disclosed to an auditor acting as a public accountant); *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002) (concluding that work product protection was waived with respect to litigation committee minutes that were disclosed to outside auditor because the auditor's interests were not aligned with the company).

[10] Like auditors, an underwriter is not only a third party but its interests not aligned with the corporation.  *See* Joseph K. Leahy, What Due Diligence Dilemma? Re-Envisioning Underwriters' Continuous Due Diligence After WorldCom, 30 Cardozo L. Rev. 2001, 2013-14 (2009) (an underwriter's duties include independently verifying information about the issuer, and involves consulting sources both inside and outside the issuer); Thomas Lee Hazen, Defenses Under 1933 Act Section 11(b)—Underwriters' Liabilities, 2 Law Sec. Reg. § 7:36 (May 2019) (an underwriter's presence in an offering can act as an implied representation that the underwriter has investigated the issuer).  Accordingly, voluntary disclosure to an underwriter should result in a waiver of both attorney-client privilege and work product protection.  *See, e.g., See, e.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 1993 WL 106429, at *2 (E.D.Pa. 1993) (holding that corporation waived the attorney-client privilege and work-product protection by

17

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2

4-5, *supra*.   Regardless of the intent behind these disclosures, they constitute pre-bankruptcy waivers of the attorney-client privilege or work product protection in the Subpoenaed Matters.

**2.      Delivery Agent Waived Any Remaining Privilege While A Debtor-In-Possession When It Sold Substantially All of Its Assets in 2016.**

When confidential corporate-client privileged communications are transferred to a third party in connection with the sale of some or all of the corporation's assets, the selling party waives any privilege still in effect as to those communications—particularly where, as here, the seller takes no reasonable measures to ensure their confidentiality.  *See, e.g., In re In–Store Advertising Sec. Litig.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995) ("[W]here confidential attorney-client communications are transferred from a corporation selling assets to the corporation buying the assets, the privilege is waived as to those communications …"); *Kaufman v. Sungard Invest. Sys.*, 05-cv-1236, 2006 WL 1307882 (D.N.J. May 10, 2006) (transfer of privileged emails on company computer as part of asset sale both "deliberate" and a waiver of the privilege when no reasonable measures taken to withhold emails or ensure their confidentiality); *Society of Professional Engineering Employees in Aerospace v. Boeing Co.*, C.A. No. 05-1251-MLB, 2010 WL 3083536 (D. Kan. Aug. 5, 2010) (seller waived attorney-client privilege over pre-closing emails by transferring them to seller after closing and made no effort to protect them during the pre-sale process); *see also GOT I, LLC v. XRT, Inc.*, 2017 WL 3113408, *2 (N.D. Ga. Feb. 28, 2017) (attorney-client privilege waived by disclosure of emails as part of asset sale); *Stooksbury v. Ross*, No. 3:09-CV-498, 2012 WL 3779113, at *3 (E.D. Tenn. Aug. 31, 2012) (privilege "unequivocally waived via the selling of" computers containing privileged communications with counsel).

In September 2016, Delivery Agent filed for Chapter 11 bankruptcy. RFJN, Ex. A. During its pendency, Delivery Agent retained control over all of its property and continued managing its business as debtors-in-possession. Before confirmation of a reorganization plan, however, Delivery

---

disclosing outside counsel's analysis of liabilities assumed in corporate acquisition to bank that had been serving as a the corporation's "investment advisor" before and after acquisition); *Randleman v. Fidelity Nat. Title Ins. Co.*, 2008 WL 4683297, *2 (N.D. Ohio 2008) (waiver found by discussing counsel's advice with agents, brokers and lenders—all third parties to the lawsuit suit).

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

Agent—in "an appropriate exercise of [its] business judgment"—agreed to sell substantially all" of Delivery Agent's assets including the company's computers, files, servers and networks to Hillair. RFJN, Ex. B at §§ 1.1, 2.1(f), 2.1(i)).   On November 18, 2016, shortly after their acquisition, Hillair then transferred Delivery Agent's assets to Connekt.  *Id.* at § 12.8.  The following year, the bankruptcy was converted to a Chapter 7 and the current Trustee was appointed.  RFJN, Ex. C.

Delivery Agent's communications with Latham, along with Latham's work product, and other information prepared by Latham for Delivery Agent resided in the company's computers, files, servers and networks. Yet no evidence exists—and Latham certainly has proffered none— that Delivery Agent made any effort to identify, remove or segregate its privileged communications with, or work product prepared by, Latham, from its computers, servers, networks or files before transferring them to Hillair.  Likewise, no evidence exists that Delivery Agent took any steps to claw-back, delete or otherwise protect its privileged communications and work-product before Hillair subsequently transferred the assets to Connekt.  Certainly, the asset purchase agreement provides no provisions for the protection of Delivery Agent's privileged communications and attorney work product with respect to the sale of Delivery Agent's servers.

Under the circumstances, no merit exits to Latham's claim that the attorney-client privilege precludes its disclosure of the Subpoenaed Matters in response to Defendants' subpoenas.  To the extent Delivery Agent held any privilege over such matters, it waived it long before the appointment of the Chapter 7 bankruptcy trustee. Delivery Agent took no reasonable measures to protect its privileged communications and attorney work-product from disclosure to third-parties, including Hillair and Connekt.   And, importantly, in October 2018, Connekt reviewed and disclosed—without objection from Delivery Agent or its estate—over 210,000 documents from Delivery Agent's computers, servers, networks and files, including Delivery Agent's privileged communications with Latham and Latham's work product, to the parties.[11]  Ferrari Dec. at ¶21.

---

[11] The privileged status of communications between Delivery Agent and Latham was extinguished once the assets containing those communications were transferred to third-parties Hillair and Connekt.  Alternatively, control of the privilege passed to Hillair and/or Connekt when they acquired "substantially all" of Delivery Agent's assets.  *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995 (N.D. Ill. 2008) (privilege transfers to buyer); *Soverain Software LLC v. The Gap, Inc.*, 340 F. Supp. 2d 760 (E.D. Tex. 2004); *SimpleAir, Inc.*

19

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

**C.      The Court Cannot Reasonably Continue The Fiction That The Attorney-Client Privilege Will Protect The Confidentiality of the Subpoenaed Matters.**

The attorney-client privilege is intended to maintain the confidentiality of the communications between an attorney and its client. *See, e.g., United States v. Palmer*, 536 F. 2d 1278, 1281 (9th Cir. 1976).  Once the proverbial cat is out of the bag, the privilege's underlying purpose of maintaining confidentiality is defeated and the communications are no longer worthy of protection. *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *7  (N.D. Cal., Mar. 26, 2013); *see also Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, 2016 WL 4967716, at *3 (D. Nev. Sept. 15, 2016) ("Since the basis for the attorney-client privilege is to protect confidential communications, that purpose ends when confidential communications are voluntarily disclosed to a third party"); *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *5 (N.D. Cal., Apr. 18, 2003)("the attorney-client privilege is about maintaining confidentiality"); *Feshbach v. S.E.C.*, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997) (The attorney-client privilege applies only to maintain the confidentiality of information claimed to be privileged).  In other words, once confidentiality is lost, a communication cannot meet the standard to establish privilege; confidentiality—once destroyed—cannot be restored.

Under the circumstances here, no reasonable basis exists for Latham to continue the fiction that the Subpoenaed Matters remain confidential and privileged.  For example, in response to Plaintiffs' subpoenas, Connekt produced to both Plaintiffs and Defendants over 27,000 attorney-client communications with or attorney work-product documents related to the Subpoenaed Matters from the Delivery Agent computers, servers, networks and files it acquired from Hillair (of these, there were approximately 12,000 communications and documents created, sent, or received by Latham pertaining to the Subpoenaed Matters).  Ferrari Dec. at ¶¶22, 24.  Moreover, third-parties to this litigation have also produced to Plaintiffs and Defendants thousands of attorney-

---

*v. Microsoft Corp.*, No. 2:11-cv-416, 2013 WL 4574594 (E.D. Tex. Aug. 27, 2013).   Under either scenario, no valid underlying privilege in the Subpoenaed Matters exists for either Latham or the Trustee to assert because the privilege has been waived; indeed, Connekt's production of Delivery Agent's privileged documents and Latham's work product is the ultimate voluntary waiver of any privilege that might still have attached to the communications.

58619077v.2

1   client communications and attorney work-product documents, including communications between

2   Defendants themselves and counsel pertaining to the Subpoenaed Matters, which were previously

3   disclosed to them before the appointment of the Trustee. Ferrari Dec. at ¶¶22-26.

4            Significantly, although Plaintiffs now claim that these attorney-client communications and

5   work-product documents produced are privileged against disclosure, they certainly have reviewed

6   those documents, and have selectively used (and continue to use) them in their depositions of party

7   affiliated witnesses and third-parties.  Ferrari Dec. at ¶28-40. *Compare* Fed. R. Civ. P. 26 (b)(5)

8   (requiring attorney inadvertently receiving privileged information to: (i) "promptly return,

9   sequester, or destroy" the material(s); (ii) "not use or disclose the information until the claim is

10  resolved"; and (iii) "take reasonable steps to retrieve the information if the [receiving] party

11  disclosed it before being notified."); *see also* ABA Model Rule 44(b). [12] In fact, even after

12  Plaintiffs filed their Motion to Strike, they introduced 27 exhibits (and testimony) regarding

13  privileged communications, 22 of which were communications to, from, drafted by, or referencing

14  Latham, without designating them confidential.  Ferrari Dec. at ¶34.

15           Even if these attorney-client communications and attorney-work product documents were

16  inadvertently disclosed, their confidentiality has been lost, and no order by the Court can restore

17  it—particularly where, as here, Plaintiffs have used, tactically and selectively, the purportedly

18  confidential documents produced to elicit testimony regarding advice given by Latham when

19  deposing Defendants, former Delivery Agent employees, and third parties. Since the basis for the

20  attorney-client privilege is to protect confidential communications, attaching the attorney-client

21  privilege to the Subpoenaed Matters now here serves no purpose.

22        **D.    Fairness and Equity Requires Waiver of The Attorney-Client Privilege.**

23           In deciding whether the attorney-client privilege is waived, "the most important

24  consideration is fairness."  *Bierman v. Marcus*, 122 F. Supp. 250, 252 (D.N.J. 1954).  Certainly,

25  the Trustee cannot invoke the privilege as to matters in which he does not hold the privilege, or as

26

27           [12] *See also In re Kennedy*, 143 B.R. 776 (D. Colo. 1992) (If a third party is given notice

28  of the potential breach of the confidentiality of his attorney-client communications, his failure to
    object constitutes a waiver).

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1   to matter whose privilege was waived before his appointment or whose confidentiality has already

2   been compromised.  (*See* Section II, 2-5 *supra*). Nor, under the circumstances, can the Trustee

3   invoke the privilege to cover undisclosed privileged communications on the same subject matter as

4   the communications already disclosed.  Fed. R. Evid. 502(a), (b); *Phoenix*, 254 F.R.D. at 576.

5         But fairness and equity also preclude the Trustee any anyone else from asserting the

6   attorney-client privilege to prevent Defendants' introduction of evidence to support their defense of

7   this action—including evidence supporting their advice-of-counsel defense, or of their use of a

8   process involving counsel or other professionals or other expert advisors to negate scienter,

9   establish good faith, demonstrate the proper exercise of their business judgment and similar issues.

10  *See e.g.*, *S.E.C. v. TenFold Corp.,* 2005 WL 7874298, at *2 (D. Utah Aug. 19, 2005) (holding that

11  former officers were entitled to documents to support an advice-of-counsel defense over

12  corporation's privilege objection based on "limited exception to the attorney-client privilege under

13  the unique facts and circumstances presented"); *Moskowitz v. Lopp*, 128 F.R.D. 624, 638  (E.D. Pa.

14  1989)  (permitting  officers  to  raise  advice  of  counsel  defense  without  the  consent  of  the

15  corporation, holding: "[a]lthough in theory the privilege belongs to the corporation, fairness

16  dictates that it be waived where a corporate officer asserts the reliance on counsel defense"); *Bisno*

17  *v. U.S.*, 299 F. 2d 711, 719 (9th. Cir. 1961) (evidence of involvement of counsel in decision-

18  making process may be treated as a circumstance indicating good faith which the trier of fact is

19  entitled to consider on the issue of fraudulent intent); *Howard v. S.E.C.*, 376 F.3d 1136 (D.C. Cir.

20  2004) (officer entitled to introduce evidence that law firm oversaw the closing of an offering at its

21  law offices, drafted the documents for another offering, and conveyed its approval of the

22  transaction to the defendant's superior even if not a formal "advice-of-counsel" defense because it

23  "constituted powerful evidence" that the defendant did not act with scienter); *S.E.C. v. Prince*,

24  2013 WL 1831841 (D. D.C. May 2, 2013)  (finding no scienter based on evidence that defendant

25  sought advice from company's lawyers through superior and in good faith relied on the advice

26  received in response; even though evidence was not necessarily an "advice-of-counsel" defense it

27  was probative of the defendant's good faith); *S.E.C. v. Ferrone*, 2016 WL 824721 (N.D. Ill. Feb.

28  22, 2016) (denying S.E.C.'s motion in limine to exclude evidence of the involvement of lawyers

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1   and other professionals in putting together transaction and public disclosure documents where

2   defendant did not establish the elements of a formal "advice-of-counsel" defense, and finding that

3   "the S.E.C.'s motion does not fully account for the issue of good faith and the ways in which it

4   might be raised legitimately by Ferrone to contest the scienter element of the S.E.C.'s case."); *Cf.*

5   *States v. W.R. Grace*, 439 F.Supp.2d 1125, 1142 (D. Mont. 2006) (concluding that assertion of

6   privilege by corporation had to yield where its invocation is incompatible with former employees'

7   Sixth Amendment right to present evidence in their defense).

8         Indeed, application of the corporate attorney-client privilege here would stand the privilege

9   on its head—giving protection to a defunct incorporeal entity that both no longer needs its

10  protection and has waived it,[13] at the expense of Defendants right to present evidence of their

11  communications with counsel to support their defense of the claims against them. Under the

12  circumstances, the rationale of the corporate attorney-client privilege is, at best, strained because

13  those who the privilege is intended to encourage to communicate with counsel (directors, officers

14  and employees) would be barred from presenting evidence that they did so. At the same time

15  Plaintiffs have used the documents to build a case with every single witness (including third party

16  witnesses) who have been deposed, while simultaneously and hypocritically seeking to prevent

17  Defendants from using those documents.  Ferrari Dec. at ¶¶14, 18, 20, 28-39; (*see* especially the

18  following exhibits  establishing Plaintiffs' use of the following in depositions: Ex. T (the February

19  7, 2014 emails from Delivery Agent General Counsel Mark Smith to the Audit Committee and

20  Latham regarding the 2014 Superbowl campaign); Ex. E (Latham's summary of the internal

21  investigation); Ex. M (the Bergeson report commissioned by the Audit Committee at Latham's

22  direction); Ex. R (Latham's remediation plan); Ex. I (Latham's drafts of the Item 304), and Exs. K

23

24       [13] *Lopes v. Vieira*, 688 F. Supp. 2d 1050 (E.D. Cal. 2010), *on reconsideration*, 719 F.
    Supp. 2d 1199 (E.D. Cal. 2010) (although corporate entity existed, it had no operations, nor
25  management, nor assets, nor activities of any kind. Privilege policies did not support recognizing
    that the shell entity retained power to assert or waive the privilege); *TAS Distributing Co., Inc. v.*
26  *Cummins Inc.*, 2009 WL 3255297 (C.D. Ill. 2009) (the privilege did not survive the corporation's
    death); *Lewis v. U.S.*, 2004 WL 3203121 (W.D. Tenn. 2004), *order aff'd*, 96 A.F.T.R.2d 2005-
27  5300, 2005 WL 1926655 (W.D. Tenn. 2005) (bankrupt corporation found to be "defunct" when
    it had no assets or liabilities, nor did it have shareholders, directors or employees, "attorney-
28  client privilege cannot be applied to a defunct corporation").

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL

58619077v.2

1   and S ((Latham's drafts of the Financing Documents). Under the circumstances, it would be

2   unconscionable to find that the corporate attorney-client privilege stands in the way of Defendants

3   attempts to defend themselves against Plaintiffs' claims.

4         Similarly, fairness and equity also require full disclosure where, as here, there has been

5   some disclosure of confidential communications while other related confidential communications

6   have not been disclosed.  *See eg. Teachers Ins. and Annuity Ass'n of America v. Shamrock*

7   *Broadcasting Co., Inc.*, 521 F. Supp. 638, 641 (S.D. N.Y. 1981) (partial disclosure risks that one

8   litigant will paint a distorted picture of the facts from information disclosed, while unfairly

9   depriving the opposing party of access to all the facts relevant to the particular subject matter in the

10  already disclosed documents; "When a party discloses part of an otherwise privileged

11  communication, he must in fairness disclose the entire communication, or at least so much of it as

12  will make the disclosure complete and not misleadingly one-sided.")

13        Undoubtedly, Defendants will be unfairly prejudiced by application of the attorney-client

14  privilege to the Subpoenaed Matters.  Plaintiffs have relied on misleadingly, one-sided privileged

15  communications and documents already disclosed both in support of their claims and to evoke

16  testimony from party-affiliated witnesses and third-parties. Nonetheless, they now want to preclude

17  Defendants' discovery of and use of communications and documents already disclosed (or yet to

18  be disclosed) that are damaging to its claims or explain Latham's advice. Plainly, the attorney-

19  client privilege was not designed to be used as a tactical tool to prejudice an opposing party—

20  particularly, where, as here, the purported privilege holder has not affirmatively asserted the

21  privilege. Markel Dec. at ¶¶1-7. Simply put, the Court cannot fairly and equitably enforce the

22  privilege when it operates as a tactical advantage to Plaintiffs to the prejudice of Defendants.

23      **E.**      **The Attorney-Client Privilege Does Not Excuses Latham's Failure To Produce**

24              **Documents To Which The Privilege Does Not Apply.**

25        Not every confidential communication between a corporate agent and counsel is protected

26  by the corporate-client privilege; indeed, corporate agents frequently seek the assistance of

27  attorneys on non-legal as well as legal matters.  *See, e.g.*, *Teltron Inc. v. Alexander*, 132 F.R.D. 394

28  (E.D.Pa.1990) (When an attorney offers business advice, instead of legal advice, to a client, the

58619077v.2

1   privilege does not apply); *McFadden v. Norton Co.*, 118 F.R.D. 625 (D. Neb. 1988); *Georgia-*

2   *Pacific Corp. v. GAF Roofing Mfg. Corp.,* No. 93 Civ. 5125, 1996 WL 29392 (S.D.N.Y. Jan.25,

3   1996).  Similarly, matters that are tangential to the legal communications are not covered by the

4   privilege.  *See e.g.*, *Haddock v. Nationwide Financial Services, Inc.*, 2009 WL 3734059 (D. Conn.

5   2009) (topic of attorney-client communications, not privileged); *U.S. v. Freese*, 2006 WL 1041820

6   (D. Neb. 2006) (communications scheduling attorney-client meetings); *United States ex rel. Barko*

7   *v. Halliburton Company*, 2014 WL 6657103 (D.D.C. 2014) (documents that reference whether a

8   communication took place); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007

9   WL 2192885, *11 (D. Kan. 2007) (Names of those who attended a meeting with counsel).

10      Latham's blanket assertion that the requested documents are protected by the attorney

11   client privilege, therefore, is inappropriate. *See Federal Deposit Ins. Corp. v. W.R. Grace & Co.*,

12   1987 WL 7810, *1 (N.D. Ill. 1987). (Privilege "is not a blanket defense to discovery. It can be

13   asserted to prevent production of specific documents but its assertion should be made to specific

14   identified documents so that counsel or the court can make a determination of the applicability of

15   the privilege."); *U.S. v. Willis*, 565 F. Supp. 1186, 1189, 13 Fed. R. Evid. Serv. 1758 (S.D. Iowa

16   1983); *In re Rospatch Securities Litigation*, 1991 WL 574963 (W.D. Mich. 1991); *In re Shopping*

17   *Carts Antitrust Litigation*, 95 F.R.D. 299, 305, 34 Fed. R. Serv. 2d 778 (S.D. N.Y. 1982). The

18   Connekt productions establish Latham has many documents that were sent, received or drafted by

19   Latham and given to third parties/Plaintiffs.  Ferrari Dec. at ¶¶ 22-23. Nothing excuses Latham's

20   failure to produce those documents.  Moreover, Defendants are entitled to any documents wherein

21   Latham is not providing "advice" but rather findings of fact.  Latham has not engaged in any such

22   analysis to determine whether it has documents responsive to Defendants' subpoenas.

23   **IV.     CONCLUSION**

24      Based on the foregoing, Defendants request that the Court enter an Order compelling

25   documents and testimony.

26   DATED:  August 27, 2019              SEYFARTH SHAW LLP

27                                         By:  */s/ Giovanna A. Ferrari*

28                                              Giovanna A. Ferrari
                                                Attorneys for Defendants

Memorandum In Support of Motion to Compel Latham & Watkin's Compliance with Subpoenas
Case No. 17-CV-00851 EDL and Case No. 17-cv-01232 EDL
58619077v.2